**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

KUY NAM KO,                                    ) NO. 5:26-cv-03061-KS
                                               )
                    Petitioner,                )
                                               )
         v.                                    ) **ORDER DENYING EX PARTE**
                                               ) **APPLICATION FOR TEMPORARY**
MARKWAYNE MULLIN et al.,                        ) **RESTRAINING ORDER [DKT. NO. 10]**
                                               )
                    Respondents.               )
                                               )
_____        )

Before the Court is the Ex Parte Application for Temporary Restraining Order ("TRO Application") filed by Petitioner Kuy Nam Ko ("Petitioner") on June 12, 2026. (Dkt. No. 10.) Petitioner, who is currently detained at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, also has a pending Petition for Writ of Habeas Corpus ("Petition"). (Dkt. No. 1.) Petitioner seeks a temporary restraining order requiring "that Petitioner be released from custody on a bond of $50,000 . . . for the pendency of his removal proceeding." (Dkt. No. 10 at 22.) On June 16, 2026, Respondents filed a combined Opposition to the TRO Application and Answer to the pending Petition. (Dkt. No. 15.) That same day, Petitioner filed a combined Reply in support of both the TRO Application and Petition. (Dkt. No. 16.).

Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. For the following reasons, Petitioner's TRO Application is **DENIED**.

1

## BACKGROUND

Petitioner is a native and citizen of South Korea who arrived in the United States as a nonimmigrant on December 16, 2005 and remained in valid status until 2008. (Dkt. No. 10 at 3.) On April 22, 2009, Petitioner married his wife, a United States citizen to whom he remains married. (*Id.* ¶ 25.) Petitioner also has an adult daughter who is a United States citizen. (*Id.*) Petitioner currently serves as pastor in Los Angeles, California. (*Id.* at 3-4.)

On August 13, 2009, Petitioner was arrested by immigration authorities in a targeted operation, detained, and placed into removal proceedings on charges of overstaying a temporary nonimmigrant visa and marriage fraud. (*Id.* at 4.) At the time of the 2009 arrest, South Korean authorities had issued an arrest warrant against Petitioner. (*Id.*) Petitioner was ordered released on a $50,000 bond on October 20, 2009 and placed in an alternatives to detention program. (*Id.*)

In 2013, United States Citizenship and Immigration Services ("USCIS") approved the immediate relative petition filed by Petitioner's wife. (*Id.* at 5.) On November 16, 2016, an Immigration Judge ("IJ") terminated removal proceedings at the parties' request so that Petitioner could pursue adjustment of status before USCIS. (*Id.*) On February 27, 2026, Petitioner appeared for an interview on his adjustment of status application where he was arrested and re-detained by the Department of Homeland Security ("DHS"). (*Id.*) On March 3, 2026, DHS initiated new removal proceedings based on charges for overstaying a nonimmigrant visa. (*Id.*)

On March 5, 2026, Petitioner, through prior counsel, filed a petition for writ of habeas corpus in this Court and an application for a temporary restraining order.[1] (*Id.*) The presiding

---

[1] *Ko v. Lyons*, No. 5:26-cv-01050-FLA-SP (C.D. Cal. March 5, 2026).

2

judge in that case ordered that the respondents provide Petitioner with an individualized bond hearing within seven days of that order. (*Id.* at 6.) The habeas petition was dismissed on April 13, 2026. (*Id.*)

On March 31, 2026, pursuant to the Court's order, Petitioner had a bond hearing before an IJ. (*Id.* at 6.) Petitioner submitted documents in support of bond establishing his medical conditions, community ties, and eligibility for relief in removal proceedings. (*Id.*) DHS submitted a South Korean arrest warrant purportedly dated December 5, 2025 that concerned a 1998 incident in which Petitioner is alleged to have been transferred land for which he never paid. (*Id.*) In response to this filing, Petitioner submitted a certificate from the Commissioner General of the Korean National Police Agency dated March 23, 2026 stating that there is no record of criminal charges issued against Petitioner as well as a letter from the Incheon District Prosecutor's Office dated March 26, 2026 providing that the case proceeded to be investigated for extradition but then the charge was withdrawn on January 26, 2022. (*Id.* at 7.) Ultimately, the IJ determined that Petitioner is a flight risk based on the arrest warrant from South Korea and stated that even if the charge was withdrawn in 2022, there was a new arrest warrant issued in December 2025 based on another criminal investigation. (*Id.* at 8.)

Petitioner filed a second habeas petition in this Court on April 21, 2026, seeking review of the IJ's March 31, 2026 bond decision.[2] (*Id.* at 8.) On May 22, 2026, the Court granted the petition for writ of habeas corpus and ordered that Respondents provide Petitioner with a new bond hearing within seven days of that order. (*Id.*)

On May 28, 2026, pursuant to the Court's order, Petitioner had another bond hearing. (*Id.* at 9.) DHS provided the following evidence: (1) an INTERPOL notice was issued in 2024 based on the same 1998 allegations regarding the financial dispute in South Korea; (2) a 2009

---

[2] *Ko v Mullin*, 5:26-cv-02020-KS (C.D. Cal. Apr. 21, 2026).

3

news article stating that Petitioner was associated with another pastor who was accused of selling student visas; and (3) a document stating that Respondent was expelled from a religious organization due to concerns that he "caused the public to believe" that Heesun You was his spouse, when in fact he had been married to Jeanne Pak. (*Id.*)  In response, Petitioner submitted documentation that DHS was aware of the 1998 allegations in South Korea when it released him on $50,000 bond in 2009 as well as authority questioning the reliance on INTERPOL warrants in immigration cases.  (*Id.*)

The IJ determined Petitioner was a flight risk and denied him bond.  (*Id.*)  The IJ issued the following written decision:

> The Court found that Respondent was such a substantial flight risk that no amount of bond or alternatives to detention would be sufficient to mitigate it.  Respondent has been living in the United States for a significant period of time as an overstay. The Court considers this as a negative factor vis a vis his risk of flight, insofar as it demonstrates a willingness to violate the immigration laws and regulations of the United States.  See Matter of Guerra, 24 I&N Dec. at 40 (noting that [a noncitizen's] "history of immigration violations" is a proper flight risk factor). Respondent has ties to the United States, including his purported United States citizen wife and daughter.  The DHS provided evidence of an INTERPOL Red Notice and a news article showing Respondent absconded from South Korea with investigations pending.  The derogatory information, including information that Respondent was expelled from a religious organization due to concerns of fraud in a marriage, makes it significantly less likely that he would comply with the terms of his release and appear at all future immigration hearings.  The Court acknowledges Respondent has medical conditions, however, the Court finds the medical conditions do not make it more likely that he will appear for Court

hearing.  If anything, the desire to receive medical treatment and not be removed from the United States makes it less likely he will appear for Court.

(Dkt. No. 15-1 at 1-2.)

**LEGAL STANDARD**

A temporary restraining order ("TRO"), like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 22 (2008).  The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Federal Rule of Civil Procedure 65 provides that a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).

A party seeking a TRO must establish the following elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs. Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).  These elements, referred to as the *Winter* factors, can be balanced on a sliding scale whereby "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

5

**DISCUSSION**

As a threshold matter, the Court agrees with Petitioner that it retains jurisdiction to review determinations of whether a noncitizen is dangerous or a risk of flight for immigration-detention purposes. Because these determinations involve mixed questions of law and fact, the Ninth Circuit has concluded they are reviewable in habeas proceedings under the abuse of discretion standard. *Martinez v. Clark*, 124 F.4th 775, 781-84 (9th Cir. 2024); *see also Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail.").

Additionally, the Court finds that any administrative exhaustion requirement should be waived due to Petitioner's "fragile medical state," which includes "cataracts and elevated eye pressure due to his glaucoma," "coughing up blood," and signs of "possible lung and pancreatic cancer." (Dkt. No. 10 at 10.) Given the lengthy delays inherent in the current appeals process, Petitioner will suffer irreparable injury if he is required to wait for a Bord of Immigration Appeals ("BIA") decision before being permitted to file a habeas claim. *See Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 U.S. Dist. LEXIS 80556, at *7-8 (W.D. Wash. Apr. 13, 2026) (waiving prudential exhaustion because the petitioner "present[ed] health and family care reasons for concluding that irreparable injury would result from requiring her to remain in custody while appealing the denial of bond to the BIA"); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254 (W.D. Wash. 2025) (quotations omitted) (waiving prudential exhaustion where the petitioner "presented uncontested evidence of unique harm to him," including "several health issues that require daily medication, which he did not receive for over a week after being detained").

\\

Still, here, Petitioner has not demonstrated a likelihood of success on his claim that "[t]he immigration judge abused [their] discretion in finding that Petitioner was categorically a flight risk due to the Korean arrest warrant for which no criminal charges have been filed"; in failing to properly apply binding precedent; and in failing to set a reasonable bond amount. (Dkt. No. 10 at 16-19.)

As noted, determinations of whether a noncitizen is dangerous or a risk of flight for immigration-detention purposes are reviewable in habeas proceedings under the abuse of discretion standard. *Martinez*, 124 F.4th at 779 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *see also W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 U.S. Dist. LEXIS 21315, at *4 (W.D. Wash. Jan. 30, 2026) (concluding that Section 1226(e) did not divest the district court of its subject-matter jurisdiction over the petitioner's claim because the petitioner was "challenging whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled" rather than "challenging the IJ's discretionary judgment"). The "abuse of discretion standard" is "deferential." *Martinez*, 124 F.4th at 784. "'[A]buse of discretion' review does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB, 2026 U.S. Dist. LEXIS 52636, at *14 (E.D. Cal. Mar. 13, 2026) (quoting *Martinez*, 124 F.4th at 784). "In other words, '[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence[;] . . . review is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." *Id.* (quoting *Lam Vi Quan v. Barr*, No. 20-cv-08118-LB, 2021 U.S. Dist. LEXIS 17705, at *11 (N.D. Cal. Jan. 29, 2021)).

At a bond hearing, the IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). The IJ may also consider any number of discretionary factors, including:

(1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

First, Petitioner asks the Court to analyze the IJ's consideration of the foreign arrest warrant under the Administrative Procedure Act's ("APA") arbitrary and capricious review standard. (Dkt. No. 10 at 16-17.) But "[t]he scope of our review under this standard is 'narrow' [and] 'a court is not to substitute its judgment for that of the agency.'" *Judulang v. Holder*, 565 U.S. 42, 52-53 (2011) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Petitioner further asserts that the IJ "failed to apply the full set of *Matter of Guerra* factors." (Dkt. No. 10 at 18.) However, the IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24 I. & N. Dec. at 40; *Slim v. Nielson*, No. 18-cv-02816-DMR, 2018 U.S. Dist. LEXIS 147603, at *10-11 (N.D. Cal. Aug. 29, 2018) ("*Matter of Guerra* does not require an IJ to consider all of the listed factors. . . . Nor does *Matter of Guerra* dictate how the factors must be evaluated, which factors are the most important, or how the IJ must weigh them."). Moreover, federal courts generally take immigration courts at their word regarding their consideration of evidence unless there is an indication that an IJ failed to actually consider highly probative evidence, which does not seem to be the case here. *Velasquez*, 2026 U.S. Dist. LEXIS 85165, at *17 (citing *Martinez*, 124 F.4th at 785 and *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011)); *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB, 2026 U.S. Dist. LEXIS 52636, at *23 (E.D. Cal. Mar. 13, 2026)

(quoting Cole, 659 F.3d at 771) ("'When nothing in the record or the BIA's decision indicates a failure to consider all the evidence,' a court will rely on the agency's statement that it considered all the evidence before it.").

Petitioner also argues that the IJ "was required to set a reasonable bond amount to address any concerns that Petitioner is a flight risk, unless no bond amount would secure attendance in removal proceedings." (Dkt. No. 10 at 19.)  Yet "Petitioner cites no binding authority to support the proposition that an IJ must discuss or articulate possible alternatives to detention at a bond hearing where findings of dangerousness and 'extreme flight risk' indicate the IJ has determined release on any conditions is not suitable." *Hachicho v. McAleenan*, No. EDCV 19-820-VAP (KK), 2019 U.S. Dist. LEXIS 185300, at *19 (C.D. Cal. Oct. 18, 2019). Rather, in *Matter of R-A-V-P-*, 27 I. & N. Dec. 803 (B.I.A. 202), the sole authority on which Petitioner relies, the Board of Immigration Appeals stated that the IJ "is in the best position to analyze these considerations" and "agree[d] with the Immigration Judge that the respondent failed to meet his burden to demonstrate that he does not present a significant risk of flight and that his release on bond is warranted." 27 I. & N. Dec. at 804-805, 807.

Lastly, Petitioner avers that his "re-detention after being released on bond, without a change[] in circumstances, violates due process." (Dkt. No. 10 at 20.)  However, "because Petitioner seeks to have this Court review a discretionary determination by the IJ as to whether to release Petitioner on bond, his attempt to characterize this claim as a due process violation fails." *Hachicho*, 2019 U.S. Dist. LEXIS 185300, at *19-20; *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("Although we retain jurisdiction to review due process challenges, a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb.").

For these reasons, the Court concludes that Petitioner has failed to establish a likelihood of success on the merits on his claims to justify the injunctive relief he seeks.  Because

Petitioner has not shown a likelihood of success or serious question on the merits, the Court need not address the remaining *Winter* factors. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up) ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors.").

## CONCLUSION

For the foregoing reasons, Petitioner's TRO Application is **DENIED WITHOUT PREJUDICE**.

DATE: June 18, 2026

_____

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

10